UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
Case No.: _____

| | |
|---|---|
| JOSE LUGO, and other similarly situated individuals, | ) ) |
| | ) |
| Plaintiff(s), | ) |
| v. | ) |
| | ) |
| HILLSBORO CLUB, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CLASS ACTION COMPLAINT

Plaintiff JOSE LUGO (the "Plaintiff"), on behalf of himself and all others similarly situated, files this complaint against Defendant HILLSBORO CLUB, INC. (the "Defendant") and in support thereof states as follows:

## NATURE OF THE ACTION, JURISDICTION & VENUE

1. This is a civil class action for collection of unpaid wages and benefits for sixty (60) calendar days pursuant to the United States Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, et. seq. ("WARN Act"). Defendant is liable under the WARN Act for the failure to provide Plaintiff and other similarly situated former employees at least 60 days advance notice of their employment losses, as required by the WARN Act.

2. This is also a civil action for discrimination, on behalf of Plaintiff only, under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"); the Florida Civil Rights Act, § 760.10, Fla. Stat. *et seq*. ("FCRA"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e et seq. ("Title VII"); and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. ("ADEA").

3. This Court has jurisdiction of the claim herein pursuant to 42 U.S.C.A. § 2000e-5(f)(3), 28 U.S.C.A. §§ 1331 and 1343(4). This civil action arises under the laws of the United States.

4. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with their federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

5. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c), and Section 2104 of the WARN Act, 29 U.S.C. § 2104(a)(5), because Defendant does business in this District and the acts constituting the violation of the above-numbered laws occurred, and the claims arose, in this District.

## THE PARTIES

6. Plaintiff is a resident of Broward County, Florida.

7. Defendant is a luxurious, exclusive, private residence club for members and their guests located in Broward County, Florida. At all times relevant, Defendant is and was a business enterprise that employed 100 or more employees, excluding part-time employees; or 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime).

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

8. Plaintiff is a 56-year-old disabled man.

9. Plaintiff worked for Defendant in more than one period of time over the last several years.

10. In 2017, Plaintiff worked as dishwasher for Defendant.

11.     Defendant provided free housing for Plaintiff as part of Plaintiff's employment benefits.

12.     Plaintiff's satisfactory or more than satisfactory work performance allowed him to get promotions starting in mid-2018. He was promoted to prep cook, then salad cook, then to line cook.

13.     On or around March of 2020, when the Covid pandemic started, Defendant conducted a massive layoff and temporarily closed its business.

14.     When Defendant conducted the massive lay-off, it did not provide any notices to its employees under the WARN Act.

15.     Defendant specifically offered Plaintiff to stay living at the property to immediately commence work when the Defendant reopened later in the year.

16.     Defendant's management specifically told Plaintiff that he was going to be the first person to be offered continued employment as soon as the club reopened in 2020.

17.     When Plaintiff was offered to stay in the property of Defendant in 2020, Defendant instructed Plaintiff to "file for unemployment" and pay for rent from the benefits it received from the State of Florida. Free housing was no longer offered to Plaintiff.

18.     Plaintiff accepted Defendant's offer and stayed living at the property of Defendant while paying rent.

19.     Plaintiff paid Defendant rent from approximately April 2020 through the time of his final wrongful termination.

20.     Later in the year, Defendant offered Plaintiff a position as "dishwasher." Plaintiff's job as prep cook/salad cook/line cook was offered to a female employee of Defendant who is substantially younger than Plaintiff.

21.     During his stay at the Defendant in 2020, Plaintiff underwent a series of life threatening medical procedures and treatment, including surgery, all of which were related to heart and lung diseases. Plaintiff has a heart condition.

22.     Plaintiff informed Defendant of his serious medical condition, about the medical treatement he received and of his surgery.

23.     In response, Defendant ordered Plaintiff to stay quarantined in his room two times "because of Covid concerns."

24.     On or about October of 2020, Defendant re-opened its doors for business and Plaintiff went back to work for Defendant.

25.     On or about November 25, 2020, Plaintiff went to pick up his mail and pay for December's rent at the Defendant's reception desk area.

26.     There, Plaintiff met with Defendant's new Chef and with Defendant's Events Director, Jonathan Verniza.

27.     Mr. Verniza and the new Chef noticed that Plaintiff was wearing a cardiac event monitor. This is a device Plaintiff wore on a daily basis to monitor his heart. The devise was necessary for the treatment of Plaintiff's heart condition.

28.     ¿As soon as the new Chef and Mr. Verniza saw Plaintiff, they asked him questions like "what is that?" "are you ok?" "can you work?" "why do you need to wear that?" "do you need to wear that all the time?" In response Plaintiff told them that he had a heart condition and that the instrument was used to monitor his heart activity, to avoid complications.

29.     Later that day, Plaintiff went to see the Defendant's General Manager, Susan Williams, to confirm that he was perfectly ok to work and that the cardiac event monitor did not and would not interfere at all with his work performance.

30.     To his surprise, Plaintiff learned that Ms. Williams was in a meeting with the new Chef and with Mr. Verniza.

31.     Moments later, Ms. Williams told Plaintiff that he was being terminated because Defendant did not need him anymore.

32.     Plaintiff performed his duties in a satisfactory manner and was never written up by the Defendant.

33.     All conditions precedent to bringing this action have occurred, been performed or been excused.

34.     The Plaintiff has retained the undersigned counsel in order that his rights and interests may be protected. The Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

## COUNT I: VIOLATION OF THE WARN ACT (CLASS ACTION)

35.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-34 above as if set out in full herein.

36.     Plaintiff was employed by Defendant in Broward County, Florida until he was laid off on or about March or early April of 2020. At least other 55 or more employees of Defendant were also laid off around those dates. Later, on or about June of 2020, Defendant laid off another 35 or more employees.

37.     Plaintiff earned regular compensation and other employee benefits and was damaged by Defendant's acts in violation of the WARN Act.

38.     Plaintiff may name additional Defendants if discovery reveals other entities that employed Plaintiff on the dates alleged herein that incurred WARN Act liability for the events alleged herein.

39.     Defendant's massive layoff qualifies as a plant closing and/or mass layoff under the WARN Act.

40.    Upon information and believe, Defendant did not notify the State of Florida about the massive layoff.

41.    Plaintiff, and all other similarly situated persons, suffered employment losses by Defendant and did not receive the 60-day notice required by the WARN Act.

42.    Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(1), and (b)(3) and the WARN Act, 29 U.S.C. § 2104(a)(5).

43.    <u>Class Definition</u>: Plaintiff brings this action on behalf of himself and all other similarly situated employees. Plaintiff seeks to represent a class initially defined as: "All of Defendant's employees who suffered an employment loss at Defendant's facility from on or about late March or early April 2020 to June of 2020, or within thirty (30) days of that date, without sixty (60) days advance written notice as required by the WARN Act."

44.    Plaintiff and class members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act, 29 U.S.C. § 2101(a)(5) and (6).

45.    Plaintiff's claims satisfy the numerosity, adequacy, commonality, typicality, predominance, and superiority requirements of a class action.

46.    <u>Numerosity and Class Size</u>: The class contains in excess of eighty-nine members, and joinder is therefore impracticable. Plaintiff believes that discovery may reveal more members belonging to the class. The precise number of class members and their addresses are readily determinable from the books and records of Defendant.

47.    <u>Adequacy</u>: Plaintiff is an affected employee who suffered an employment loss by Defendant on or about March or early April of 2020, without the notice required by the WARN Act. He is thereby a member of the class. Plaintiff is committed to pursuing this action and has retained counsel with experience prosecuting complex wage and employment, class action litigation. Accordingly, Plaintiff is an adequate representative of the class and

has the same interests as all of its members. Plaintiff will fairly and adequately protect the interests of the absent members of the class.

48.     <u>Common Questions of Law and Fact</u>: There are questions of fact and law that are common to the class and predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following: a. Whether the provisions of the WARN Act apply; b. Whether Defendant's employee layoffs on or about March or early April and June 2020, and within 30 days of that date, constitute a "plant closing" and/or "mass layoff" under the WARN Act; c. Whether Defendant failed to provide the notices required by the WARN Act, 29 U.S.C. § 2102(b); d. Whether Defendant can avail itself of any of the provisions of the WARN Act permitting lesser periods of notice; e. The appropriate formulae to measure damages under the WARN Act, 29 U.S.C. § 2104(a); and f. The appropriate definitions and formulae to measure payments to potentially offset damages under the WARN Act, 29 U.S.C. § 2104(a)(2).

49.     <u>Typicality</u>: Plaintiff's claim is typical of the claims of all members of the class. Plaintiff was laid off on or about the same date as other members of the class. Plaintiff, like members of the class, was not provided with sufficient notice as required by the WARN Act.

50.     <u>Nature of the Proposed Notice</u>: Plaintiff proposes that, should the Court certify the class, notice be sent to class members via first class mail and email. The names and contact information of class members are readily determinable from the books and records of Defendant.

51.     <u>Rule 23(b) Requirements</u>: The common questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and

equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

52.     A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

53.     Further, class action treatment of this action is authorized and appropriate under the WARN Act, 29 U.S.C. § 2104(a)(5), which clearly provides that a plaintiff seeking to enforce liabilities under the WARN Act may sue either on behalf of his or herself, for other persons similarly situated, or both.

54.     At all times material herein, Plaintiff, and similarly situated persons, have been entitled to the rights, protections, and benefits provided under the WARN Act, 29 U.S.C. § 2101 et. seq.

55.     Defendant was, and is, subject to the notice and back pay requirements of the federal WARN Act because Defendant is a business enterprise that employed 100 or more employees, excluding part-time employees, and/or, employed 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of overtime), as defined in the WARN Act. 29 U.S.C. §§ 2101(1)(A) & (B).

56.     The WARN Act regulates the amount of notice an employer must provide to employees who will be terminated due to the employer's closing of a plant or mass layoffs, as well as the back pay and other associated benefits an affected employee is due based on a violation of the required notice period.

57.    Pursuant to the WARN Act, 29 U.S.C. § 2102, and 20 C.F.R. § 639.1 - § 639.10 et seq., Defendant was required to provide at least sixty (60) days prior written notice of the termination, or notice as soon as practicable, to the affected employees, explaining why the sixty (60) days prior notice was not given.

58.    Defendant willfully violated the federal WARN Act by failing to provide the required notice.

59.    Defendant failed to pay Plaintiff and other similarly situated employees their respective wages, salary, commissions, bonuses, accrued holiday pay, and accrued vacation for 60 working days following their respective terminations, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

60.    Section 2103 of the federal WARN Act exempts certain employers from the notice requirements of the Act. 29 U.S.C. §§ 2103(1)-(2). None of the WARN Act exemptions apply to Defendant. Accordingly, Plaintiff and class members must receive the notice and back pay required by the WARN Act, 29 U.S.C. §§ 2102, 2104. 28.

61.    Plaintiff and all similarly situated employees have been damaged by Defendant's conduct constituting violations of the WARN Act and are entitled to damages for their back pay and associated benefits for each day of the violation because Defendant has not acted in good faith nor with reasonable grounds to believe their acts and omissions were not a violation of the WARN Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and those similarly situated request that this Honorable Court:
   A.  Issue an order certifying that the action may be maintained as a class action under Federal Rule of Civil Procedure 23;

   B.  Order the designation of Jose Lugo as the representative of the class, and counsel

of record as Class Counsel;

C.  Award Plaintiff compensatory damages in an amount equal to at least the amounts provided by the WARN Act, 29 U.S.C. § 2104(a);

D.  Award Plaintiff reasonable attorneys' fees, costs, and disbursements as allowed by the WARN Act, 20 U.S.C. § 2104(1)(6); and (5) such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request trial by jury of all issues triable by jury pursuant to Fed. R. Civ. P. 38.

## COUNT II: TITLE VII SEX DISCRIMINATION
## (DISPARATE TREATMENT)

62.  Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-34 above as if set out in full herein.

63.  At all times pertinent hereto, Defendant has been engaged in an industry affecting commerce and has had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

64.  At all times material, Defendant was a "person" and an "employer" as defined by 29 U.S.C. § 630.

65.  Plaintiff has complied with all conditions precedent in filing this action, to wit:

a.  Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, Miami District Office;

b.  More than 180 days have passed since the filing of Plaintiff's charge of discrimination; and

c.  Plaintiff received a Right to Sue Notice as to his charge of discrimination within 90 days of the filing of this action.

66.  Any other applicable conditions precedent to bringing this action have occurred, been performed, or been excused before the filing of this lawsuit.

67.     When Defendant temporarily closed its business in 2020, its management specifically promised Plaintiff that he was going to be the first person to be offered continued employment as a cook/salad cook/line cook as soon as the club reopened in 2020.

68.      Instead of offering Plaintiff continued employment as a cook/salad cook/line cook, Defendant offered Plaintiff a position as "dishwasher" and the position of cook/salad cook/line cook was offered to a female employee of Defendant.

69.     The terms and conditions of employment for a cook/salad cook/line cook, including pay, are better than the terms and conditions of employment for a dishwasher.

70.     Defendant offered Plaintiff's job to a female employee on the basis of gender.

71.     Plaintiff's sex was a motivating factor that caused Defendant to discriminate against Plaintiff.

72.     Upon information and belief, when Plaintiff was ultimately terminated in late November 2020, the female employee was not. Plaintiff will amend his pleading to conform to the evidence if discovery confirms this allegation.

73.     Plaintiff sustained emotional suffering and injury attributable to the discrimination.

74.     When Defendant discriminated against Plaintiff on the basis of his sex, Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and those similarly situated request that this Honorable Court:

A. Issue an order enjoining Defendant to cease and desist from the conduct described in Count II of this Complaint;

B. Issue an order requiring Defendant to take steps to protect Plaintiff and other employees similarly situated from the type of conduct described in Count II of this Complaint, and from all other forms of harassment in the future.

C. Issue an order requiring Defendant to adopt and disseminate a policy protecting employees from gender discrimination in the workplace and establishing reasonable and adequate procedures for investigating complaints of gender discrimination and taking suitable remedial action.

D. Order reinstatement of Plaintiff in the position he would occupy and with all the benefits he would have if he had not suffered adverse employment action attributable to gender discrimination, or award Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

E. Award Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if Plaintiff's employment had not been terminated.

F. Award Plaintiff compensatory damages for his emotional suffering.

G. Award Plaintiff punitive damages.

H. Award Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

I. Award Plaintiff costs, interest, and such other relief as this Court may deem proper.

## COUNT III: ADA DISABILITY DISCRIMINATION
## (DISPARATE TREATMENT)

75.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-34 above as if set out in full herein.

76.     At all times pertinent hereto, Defendant has been engaged in an industry affecting commerce and has had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

77.     At all times material, Defendant was a "person" and an "employer" as defined by 29 U.S.C. § 630.

78.     Plaintiff has complied with all conditions precedent in filing this action, to wit:

a. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, Miami District Office;

b.  More than 180 days have passed since the filing of Plaintiff's charge of discrimination; and

c.  Plaintiff received a Right to Sue Notice as to his charge of discrimination within 90 days of the filing of this action.

79.     Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

80.     Plaintiff was an "employee" of Defendant as defined by the ADA.

81.     From on or around April of 2020 through November of 2020, Plaintiff underwent a series of life threatening medical procedures and treatment, including surgery, all of which were related to heart and lung diseases aflicting Plaintiff.

82.     After treatment, due to Plaintiff's heart condition, Plaintiff was ordered by his doctors to wear a cardiac event monitor. This device allowed for Plaintiff's doctors to monitor Plaintiff's heart and prevent heart failure, which could cause death.

83.     Plaintiff's heart condition substantially limited Plaintiff from engaging in one or more major life activities. Specifically, Plaintiff could not walk, run, jump, perform manual tasks, take care of himself, work, and engage in normal every day activities without being careful about his pulse and without monitoring his heart.

84.     Plaintiff's heart condition is a disability and an impairment because it restricted Plaintiff from performing the above-referenced activities, compared to an average person in the general population.

85.     On or about November 25, 2020, Plaintiff went to pick up his mail and pay for December's rent at the Defendant's reception desk area.

86.     There, he met with Defendant's new Chef and with Defendant's Events Director, Jonathan Verniza.

87.     Mr. Verniza and the new Chef noticed that Plaintiff was wearing a cardiac event monitor. This is a device Plaintiff wore on a daily basis to monitor his heart. The devise was was necessary for the treatment of Plaintiff's heart.

88.     ¿As soon as the new Chef and Mr. Verniza saw Plaintiff, they asked him questions like "what is that?" "are you ok?" "can you work?" "why do you need to wear that?" "do you need to wear that all the time?" In response Plaintiff told them that he had a heart condition and that the instrument was used to monitor his heart activity.

89.     Later that day, Plaintiff went to see the General Manager, Susan Williams, to confirm to her that he was perfectly ok to work and that the cardiac event monitor did not and would not interfere at all with his work.

90.     To his surprise, Plaintiff learned that Ms. Williams was in a meeting with the new Chef and with Mr. Verniza.

91.     Moments later, Ms. Williams told Plaintiff that he was being terminated because Defendant did not need him anymore.

92.     Plaintiff's heart condition qualified as a disability or was regarded as a disability by Defendant, within the meaning of the ADA. Defendant regarded Plaintiff as disabled when it learned of Plaintiff's treatment of his heart and lungs and when it learned that Plaintiff was wearing a cardiac event monitor.

93.     In addition, when Defendant quarantined Plaintiff, Defendant regarded Plaintiff as a disabled person with Covid.

94.     At all times during his employment, Plaintiff was qualified to perform the essential functions of his position with or without reasonable accommodations.

95.     Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the ADA by treating Plaintiff differently than similarly situated employees in the terms and conditions of his employment.

96.     Defendant terminated Plaintiff because of his disability, in violation of the ADA.

97.     As a direct and proximate result of the above-described actions of Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

98.     Furthermore, as a direct and proximate result of such actions by Defendant, Plaintiff has been and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendant's conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and those similarly situated request that this Honorable Court:

A. Enter judgment in Plaintiff's favor and against Defendant for its violations of the ADA;

B. Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

C. Award Plaintiff compensatory damages under the ADA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Award Plaintiff prejudgment interest on her damages award;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT IV: ADA DISCRIMINATION
## (FAILURE TO ACCOMMODATE)

99.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-34 above as if set out in full herein.

100.    At all times pertinent hereto, Defendant has been engaged in an industry affecting commerce and has had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

101.    At all times material, Defendant was a "person" and an "employer" as defined by 29 U.S.C. § 630.

102.    Plaintiff has complied with all conditions precedent in filing this action, to wit:

    a.  Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, Miami District Office;

    b.  More than 180 days have passed since the filing of Plaintiff's charge of discrimination; and

    c.  Plaintiff received a Right to Sue Notice as to his charge of discrimination within 90 days of the filing of this action.

103.    Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

104.    Plaintiff was an "employee" of Defendant as defined by the ADA.

105.    From on or around April of 2020 through November of 2020, Plaintiff underwent a series of life threatening medical procedures and treatment, including surgery, all of which were related to heart and lung diseases aflicting Plaintiff.

106.    After treatment, due to Plaintiff's heart condition, Plaintiff was ordered by his doctors to wear a cardiac event monitor. This device allowed for Plaintiff's doctors to monitor Plaintiff's heart and prevent heart failure, which could cause death.

107.    Plaintiff's heart condition substantially limited Plaintiff from engaging in one or more major life activities. Specifically, Plaintiff could not walk, run, jump, perform manual tasks, take care of himself, work, and engage in normal every day activities without being careful about his pulse and without monitoring his heart.

108.    Plaintiff's heart condition is a disability and an impairment because it restricted Plaintiff from performing the above-referenced activities, compared to an average person in the general population.

109.    On or about November 25, 2020, Plaintiff went to pick up his mail and pay for December's rent at the Defendant's reception desk area.

110.    There, he met with Defendant's new Chef and with Defendant's Events Director, Jonathan Verniza.

111.    Mr. Verniza and the new Chef noticed that Plaintiff was wearing a cardiac event monitor. This is a device Plaintiff wore on a daily basis to monitor his heart. The devise was was necessary for the treatment of Plaintiff's heart.

112.    ¿As soon as the new Chef and Mr. Verniza saw Plaintiff, they asked him questions like "what is that?" "are you ok?" "can you work?" "why do you need to wear that?" "do you need to wear that all the time?" In response Plaintiff told them that he had a heart condition and that the instrument was used to monitor his heart activity.

113.    Later that day, Plaintiff went to see the General Manager, Susan Williams, to confirm to her that he was perfectly ok to work and that the cardiac event monitor did not and would not interfere at all with his work.

114.    To his surprise, Plaintiff learned that Ms. Williams was in a meeting with the new Chef and with Mr. Verniza.

115.    Moments later, Ms. Williams told Plaintiff that he was being terminated because Defendant did not need him anymore.

116.    Plaintiff's heart condition qualified as a disability or was regarded as a disability by Defendant, within the meaning of the ADA. Defendant regarded Plaintiff as disabled when it learned of Plaintiff's treatment of his heart and lungs and when it learned that Plaintiff was wearing a cardiac event monitor.

117.    In addition, when Defendant quarantined Plaintiff, Defendant regarded Plaintiff as a disabled person with Covid.

118.    At all times during his employment, Plaintiff was qualified to perform the essential functions of his position with or without reasonable accommodations.

119.    When Plaintiff went to see Ms. Williams to confirm that he was perfectly ok to work while wearing a cardiac event monitor, Plaintiff requested a reasonable accommodation.

120.    Instead of engaging into a discussion as to how Plaintiff's disability or perceived disability could be accommodated, Defendant terminated Plaintiff's employment.

121.    Defendant did not make a good faith effort to accommodate Plaintiff's disability or perceived disability.

122.    Plaintiff could have been reasonably accommodated but for Defendant's lack of good faith.

123.    Defendant could have reasonably accommodated Plaintiff, without any undue hardship to its business, but failed to do so.

124.    Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the ADA by failing to accommodate Plaintiff's disability or perceived disability. In other words, after having a discussion with Plaintiff, Defendant could have easily allowed Plaintiff to work while wearing a cardiac event monitor.

125.    As a direct and proximate result of the above-described actions of Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

126.    Furthermore, as a direct and proximate result of such actions by Defendant, Plaintiff has been and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendant's conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and those similarly situated request that this Honorable Court:

A. Enter judgment in Plaintiff's favor and against Defendant for its violations of the ADA;

B. Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

C. Award Plaintiff compensatory damages under the ADA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Award Plaintiff prejudgment interest on her damages award;

E. Award Plaintiff reasonable costs and attorney's fees; and

F. Grant Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT V: AGE DISCRIMINATION (DISPARATE TREATMENT) – ADEA

127. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-34 above as if set out in full herein.

128. At all times pertinent hereto, Defendant has been engaged in an industry affecting commerce and has had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

129. At all times material, Defendant was a "person" and an "employer" as defined by 29 U.S.C. § 630.

130. Plaintiff has complied with all conditions precedent in filing this action, to wit:

   a. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, Miami District Office;

   b. More than 180 days have passed since the filing of Plaintiff's charge of discrimination; and

  c. Plaintiff received a Right to Sue Notice as to his charge of discrimination within 90 days of the filing of this action.

131. Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

132. When Defendant temporarily closed its business in 2020, its management specifically promised Plaintiff that he was going to be the first person to be offered continued employment as a cook/salad cook/line cook as soon as the club reopened in 2020.

133. Instead of offering Plaintiff continued employment as a cook/salad cook/line cook, Defendant offered Plaintiff a position as "dishwasher" and the position of cook/salad cook/line cook was offered to a female employee, substantially younger than Plaintiff.

134. The terms and conditions of employment for a cook/salad cook/line cook, including pay, are better than the terms and conditions of employment for a dishwasher.

135. Defendant offered Plaintiff's job to an employee who is younger than Plaintiff on the basis of age.

136. Plaintiff's age was a motivating factor that caused Defendant to discriminate against Plaintiff.

137. Upon information and belief, when Plaintiff was ultimately terminated in late November 2020, the employee who is younger than Plaintiff was not terminated. Plaintiff will amend his pleading to conform to the evidence if discovery confirms this allegation.

138. Plaintiff sustained emotional suffering and injury attributable to the discrimination.

139. When Defendant discriminated against Plaintiff on the basis of his age, Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and those similarly situated request that this Honorable Court:

A.  Enter judgment in Plaintiff's favor and against Defendant for its violations of the ADEA;

B.  Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

C.  Award Plaintiff liquidated damages;

D.  Award Plaintiff prejudgment interest on her damages award;

E.  Award Plaintiff reasonable costs and attorney's fees; and

F.  Grant Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT VI: FCRA SEX DISCRIMINATION
### (DISPARATE TREATMENT)

140.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-34 above as if set out in full herein.

141.    At all times pertinent hereto, Defendant has been engaged in an industry affecting commerce and has had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

142.    At all times material hereto, Plaintiff was an "aggrieved person" as defined by the FCRA, Fla. Stat. § 760.02(10).

143.    At all times material, Defendants were a "person" and an "employer" as defined by Fla. Stat. § 760.02.

144.    Plaintiff has complied with all conditions precedent in filing this action, to wit:

   a.  Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, Miami District Office;

   b.  More than 180 days have passed since the filing of Plaintiff's charge of discrimination; and

      c. Plaintiff received a Right to Sue Notice as to his charge of discrimination within 90 days of the filing of this action.

145. Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

146. When Defendant temporarily closed its business in 2020, its management specifically promised Plaintiff that he was going to be the first person to be offered continued employment as a cook/salad cook/line cook as soon as the club reopened in 2020.

147. Instead of offering Plaintiff continued employment as a cook/salad cook/line cook, Defendant offered Plaintiff a position as "dishwasher" and the position of cook/salad cook/line cook was offered to a female employee of Defendant.

148. The terms and conditions of employment for a cook/salad cook/line cook, including pay, are better than the terms and conditions of employment for a dishwasher.

149. Defendant offered Plaintiff's job to a female employee on the basis of gender.

150. Plaintiff's sex was a motivating factor that caused Defendant to discriminate against Plaintiff.

151. Upon information and belief, when Plaintiff was ultimately terminated in late November 2020, the female employee was not. Plaintiff will amend his pleading to conform to the evidence if discovery confirms this allegation.

152. Plaintiff sustained emotional suffering and injury attributable to the discrimination.

153. When Defendant discriminated against Plaintiff on the basis of his sex, Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and those similarly situated request that this Honorable Court:

A. Issue an order enjoining Defendant to cease and desist from the conduct described in Count VI of this Complaint;

B. Issue an order requiring Defendant to take steps to protect Plaintiff and other employees similarly situated from the type of conduct described in Count VI of this Complaint, and from all other forms of harassment in the future.

C. Issue an order requiring Defendant to adopt and disseminate a policy protecting employees from gender discrimination in the workplace and establishing reasonable and adequate procedures for investigating complaints of gender discrimination and taking suitable remedial action.

D. Order reinstatement of Plaintiff in the position he would occupy and with all the benefits he would have if he had not suffered adverse employment action attributable to gender discrimination, or award Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

E. Award Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if Plaintiff's employment had not been terminated.

F. Award Plaintiff compensatory damages for his emotional suffering.

G. Award Plaintiff punitive damages.

H. Award Plaintiff attorneys' fees, including expert witness fees, pursuant to the FCRA.

I. Award Plaintiff costs, interest, and such other relief as this Court may deem proper.

## COUNT VII: FCRA HANDICAP DISCRIMINATION
## (DISPARATE TREATMENT)

154.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-34 above as if set out in full herein.

155.    At all times pertinent hereto, Defendant has been engaged in an industry affecting commerce and has had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

156.    At all times material hereto, Plaintiff was an "aggrieved person" as defined by the FCRA, Fla. Stat. § 760.02(10).

157.    At all times material, Defendant was a "person" and an "employer" as defined by Fla. Stat. § 760.02.

158.    Plaintiff has complied with all conditions precedent in filing this action, to wit:

    a.   Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, Miami District Office;

    b.   More than 180 days have passed since the filing of Plaintiff's charge of discrimination; and

    c.   Plaintiff received a Right to Sue Notice as to his charge of discrimination within 90 days of the filing of this action.

159.    Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

160.    Plaintiff was an "employee" of Defendant as defined by the FCRA.

161.    From on or around April of 2020 through November of 2020, Plaintiff underwent a series of life threatening medical procedures and treatment, including surgery, all of which were related to heart and lung diseases aflicting Plaintiff.

162.    After treatment, due to Plaintiff's heart condition, Plaintiff was ordered by his doctors to wear a cardiac event monitor. This device allowed for Plaintiff's doctors to monitor Plaintiff's heart and prevent heart failure, which could cause death.

163.    Plaintiff's heart condition substantially limited Plaintiff from engaging in one or more major life activities. Specifically, Plaintiff could not walk, run, jump, perform manual tasks, take care of himself, work, and engage in normal every day activities without being careful about his pulse and without monitoring his heart.

164.    Plaintiff's heart condition is a disability and an impairment because it restricted Plaintiff from performing the above-referenced activities, compared to an average person in the general population.

165.    On or about November 25, 2020, Plaintiff went to pick up his mail and pay for December's rent at the Defendant's reception desk area.

166.    There, he met with Defendant's new Chef and with Defendant's Events Director, Jonathan Verniza.

167.    Mr. Verniza and the new Chef noticed that Plaintiff was wearing a cardiac event monitor. This is a device Plaintiff wore on a daily basis to monitor his heart. The devise was was necessary for the treatment of Plaintiff's heart.

168.    ¿As soon as the new Chef and Mr. Verniza saw Plaintiff, they asked him questions like "what is that?" "are you ok?" "can you work?" "why do you need to wear that?" "do you need to wear that all the time?" In response Plaintiff told them that he had a heart condition and that the instrument was used to monitor his heart activity.

169.    Later that day, Plaintiff went to see the General Manager, Susan Williams, to confirm to her that he was perfectly ok to work and that the cardiac event monitor did not and would not interfere at all with his work.

170.    To his surprise, Plaintiff learned that Ms. Williams was in a meeting with the new Chef and with Mr. Verniza.

171.    Moments later, Ms. Williams told Plaintiff that he was being terminated because Defendant did not need him anymore.

172.    Plaintiff's heart condition qualified as a disability or was regarded as a disability by Defendant, within the meaning of the FCRA. Defendant regarded Plaintiff as disabled when it learned of Plaintiff's treatment of his heart and lungs and when it learned that Plaintiff was wearing a cardiac event monitor.

173.    In addition, when Defendant quarantined Plaintiff, Defendant regarded Plaintiff as a disabled person with Covid.

174.    At all times during his employment, Plaintiff was qualified to perform the essential functions of his position with or without reasonable accommodations.

175.    Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees in the terms and conditions of his employment.

176.    Defendant terminated Plaintiff because of his disability, in violation of the FCRA.

177.    As a direct and proximate result of the above-described actions of Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

178.    Furthermore, as a direct and proximate result of such actions by Defendant, Plaintiff has been and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendant's conduct.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and those similarly situated request that this Honorable Court:

A. Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

B. Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

C. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

D. Award Plaintiff punitive damages to be determined at trial;

E. Award Plaintiff prejudgment interest on her damages award;

F. Award Plaintiff reasonable costs and attorney's fees; and

G. Grant Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT VIII: FCRA HANDICAP DISCRIMINATION
## (FAILURE TO ACCOMMODATE)

179.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-34 above as if set out in full herein.

180.    At all times pertinent hereto, Defendant has been engaged in an industry affecting commerce and has had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

181.    At all times material hereto, Plaintiff was an "aggrieved person" as defined by the FCRA, Fla. Stat. § 760.02(10).

182.    At all times material, Defendant was a "person" and an "employer" as defined by Fla. Stat. § 760.02.

183.    Plaintiff has complied with all conditions precedent in filing this action, to wit:

   a.   Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, Miami District Office;

   b.   More than 180 days have passed since the filing of Plaintiff's charge of discrimination; and

   c.   Plaintiff received a Right to Sue Notice as to his charge of discrimination within 90 days of the filing of this action.

184.    Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

185.    Plaintiff was an "employee" of Defendant as defined by the FCRA.

186.    From on or around April of 2020 through November of 2020, Plaintiff underwent a series of life threatening medical procedures and treatment, including surgery, all of which were related to heart and lung diseases aflicting Plaintiff.

187.    After treatment, due to Plaintiff's heart condition, Plaintiff was ordered by his doctors to wear a cardiac event monitor. This device allowed for Plaintiff's doctors to monitor Plaintiff's heart and prevent heart failure, which could cause death.

188.    Plaintiff's heart condition substantially limited Plaintiff from engaging in one or more major life activities. Specifically, Plaintiff could not walk, run, jump, perform manual tasks, take care of himself, work, and engage in normal every day activities without being careful about his pulse and without monitoring his heart.

189.    Plaintiff's heart condition is a disability and an impairment because it restricted Plaintiff from performing the above-referenced activities, compared to an average person in the general population.

190.    On or about November 25, 2020, Plaintiff went to pick up his mail and pay for December's rent at the Defendant's reception desk area.

191.    There, he met with Defendant's new Chef and with Defendant's Events Director, Jonathan Verniza.

192.    Mr. Verniza and the new Chef noticed that Plaintiff was wearing a cardiac event monitor. This is a device Plaintiff wore on a daily basis to monitor his heart. The devise was was necessary for the treatment of Plaintiff's heart.

193.    ¿As soon as the new Chef and Mr. Verniza saw Plaintiff, they asked him questions like "what is that?" "are you ok?" "can you work?" "why do you need to wear that?" "do you need to wear that all the time?" In response Plaintiff told them that he had a heart condition and that the instrument was used to monitor his heart activity.

194.    Later that day, Plaintiff went to see the General Manager, Susan Williams, to confirm to her that he was perfectly ok to work and that the cardiac event monitor did not and would not interfere at all with his work.

195.    To his surprise, Plaintiff learned that Ms. Williams was in a meeting with the new Chef and with Mr. Verniza.

196.    Moments later, Ms. Williams told Plaintiff that he was being terminated because Defendant did not need him anymore.

197.    Plaintiff's heart condition qualified as a disability or was regarded as a disability by Defendant, within the meaning of the FCRA. Defendant regarded Plaintiff as disabled when it learned of Plaintiff's treatment of his heart and lungs and when it learned that Plaintiff was wearing a cardiac event monitor.

198.    In addition, when Defendant quarantined Plaintiff, Defendant regarded Plaintiff as a disabled person with Covid.

199.    At all times during his employment, Plaintiff was qualified to perform the essential functions of his position with or without reasonable accommodations.

200.    When Plaintiff went to see Ms. Williams to confirm that he was perfectly ok to work while wearing a cardiac event monitor, Plaintiff requested a reasonable accommodation.

201.    Instead of engaging into a discussion as to how Plaintiff's disability or perceived disability could be accommodated, Defendant terminated Plaintiff's employment.

202.    Defendant did not make a good faith effort to accommodate Plaintiff's disability or perceived disability.

203.    Plaintiff could have been reasonably accommodated but for Defendant's lack of good faith.

204.    Defendant could have reasonably accommodated Plaintiff, without any undue hardship to its business, but failed to do so.

205.    Defendant intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by failing to accommodate Plaintiff's disability or

perceived disability. In other words, after having a discussion with Plaintiff, Defendant could have easily allowed Plaintiff to work while wearing a cardiac event monitor.

206.    As a direct and proximate result of the above-described actions of Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

207.    Furthermore, as a direct and proximate result of such actions by Defendant, Plaintiff has been and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendant's conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and those similarly situated request that this Honorable Court:

A. Enter judgment in Plaintiff's favor and against Defendant for its violations of the ADA;

B. Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

C. Award Plaintiff punitive damages to be determined at trial;

D. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

E. Award Plaintiff prejudgment interest on her damages award;

F. Award Plaintiff reasonable costs and attorney's fees; and

G. Grant Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT IX: AGE DISCRIMINATION (DISPARATE TREATMENT) – FCRA

208.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-34 above as if set out in full herein.

209.   At all times pertinent hereto, Defendant has been engaged in an industry affecting commerce and has had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

210.   At all times material hereto, Plaintiff was an "aggrieved person" as defined by the FCRA, Fla. Stat. § 760.02(10).

211.   At all times material, Defendant was a "person" and an "employer" as defined by Fla. Stat. § 760.02.

212.   Plaintiff has complied with all conditions precedent in filing this action, to wit:

   a.   Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, Miami District Office;

   b.   More than 180 days have passed since the filing of Plaintiff's charge of discrimination; and

   c.   Plaintiff received a Right to Sue Notice as to his charge of discrimination within 90 days of the filing of this action.

213.   Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

214.   When Defendant temporarily closed its business in 2020, its management specifically promised Plaintiff that he was going to be the first person to be offered continued employment as a cook/salad cook/line cook as soon as the club reopened in 2020.

215.   Instead of offering Plaintiff continued employment as a cook/salad cook/line cook, Defendant offered Plaintiff a position as "dishwasher" and the position of cook/salad cook/line cook was offered to a female employee, substantially younger than Plaintiff.

216.   The terms and conditions of employment for a cook/salad cook/line cook, including pay, are better than the terms and conditions of employment for a dishwasher.

217.    Defendant offered Plaintiff's job to an employee who is younger than Plaintiff on the basis of age.

218.    Plaintiff's age was a motivating factor that caused Defendant to discriminate against Plaintiff.

219.    Upon information and belief, when Plaintiff was ultimately terminated in late November 2020, the employee who is younger than Plaintiff was not terminated. Plaintiff will amend his pleading to conform to the evidence if discovery confirms this allegation.

220.    Plaintiff sustained emotional suffering and injury attributable to the discrimination.

221.    When Defendant discriminated against Plaintiff on the basis of his age, Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and those similarly situated request that this Honorable Court:

A.  Enter judgment in Plaintiff's favor and against Defendant for its violations of the FCRA;

B.  Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

C.  Award Plaintiff punitive damages to be determined at trial;

D.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

E.  Award Plaintiff prejudgment interest on her damages award;

F.  Award Plaintiff reasonable costs and attorney's fees; and

G.  Grant Plaintiff such other and further relief as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues so triable as of right.

Date: April 11, 2022.

Respectfully submitted,

**s/ Tanesha W. Blye**
Tanesha W. Blye, Esquire
Fla. Bart No.: 738158
Email: tblye@saenzanderson.com

**s/ R. Martin Saenz**
R. Martin Saenz, Esquire
Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com

SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Counsel for Plaintiff*